Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel II

| | | |
|---|---|---|
| WILFREDO G. SANTOS VÁZQUEZ<br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br>Recurrida | KLRA202300458 | *Revisión Administrativa* procedente de la División de Remedios Administrativos del Departamento de Corrección y Rehabilitación<br><br>Caso Núm.<br>B-701-23 |

Panel integrado por su presidente, el Juez Bermúdez Torres, el Juez Adames Soto y la Juez Aldebol Mora

Adames Soto, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 12 de enero de 2024.

Comparece ante nosotros la parte recurrente de epígrafe, quien es miembro de la población penal, solicitando que revisemos una determinación de la División de Remedios Administrativos (DRA) del Departamento de Corrección y Rehabilitación (DCR), de 23 de mayo de 2023. El dictamen administrativo aludido fue la respuesta que dio el DCR a una solicitud de estudio y trabajo presentada por la parte recurrente, que se encuentra en circunstancias particulares de confinamiento.

Por los fundamentos que expondremos a continuación, revocamos la determinación recurrida y devolvemos el asunto al DCR para que obre según aquí le instruimos.

**I. Resumen del tracto procesal**

El 2 de mayo de 2023, la parte recurrente, que se identifica como *trans*, presentó una *Solicitud de Remedio Administrativo* ante el DRA. En el primer párrafo de la referida *Solicitud* manifestó que, el 20 de abril de 2023, fue trasladada a una unidad segregada, de tres confinados, donde anteriormente ubicaban a miembros de la comunidad LGBTTQIA. Luego, la parte recurrente

Número Identificador

SEN2024_____

hizo dos afirmaciones precisas en la *Solicitud*: (1) que **se sentía segura en el lugar donde fue ubicada**; (2) pero **necesitaba estudiar y trabajar**, y **estos privilegios le eran negados encontrándose en segregación**. Finalizó solicitando que se habilitara dicha unidad como ¨N¨, según lo establecía la Orden Administrativa DCR 2018-05, que dispone lo concerniente a la política pública de la comunidad LGBTTQIA en las cárceles, y así poder continuar con su plan institucional.

Ante lo cual, el 23 de mayo de 2023, la DRA emitió una *Respuesta* indicando que se le había concedido espacio a la parte recurrente en el Edificio 2, Sección G, debido a que el dormitorio que reclamó se encontraba en Guayama 500. Añadió que, habiéndosele explicado varios pormenores a la parte recurrente, se le había ubicado en el Edificio 2, Sección G para que continuara con su ajuste institucional.

Nótese que, en la referida *Respuesta,* el DCR **no** atendió la petición precisa de la parte recurrente respecto a la continuación de sus estudios y trabajo desde el nuevo lugar en el que se le ubicó.

Insatisfecha con la referida *Respuesta*, el 13 de junio de 2023, la parte recurrente presentó una *Solicitud de Reconsideración.* Cónsono con lo que planteó en su *Solicitud de Remedio Administrativo,* la parte recurrente aseveró en la *Solicitud de Reconsideración* que la *Respuesta* administrativa no atendió su reclamo adecuadamente, pues su solicitud era a los efectos de que *le proveyeran trabajo, estudios y servicios, al habilitar como vivienda la unidad ¨N¨.* Sin embargo, habiendo reiterado su reclamo sobre la provisión de estudios y trabajo, en la *Solicitud de Reconsideración,* la parte recurrente procedió a incorporar una nueva y extensa alegación sobre el presunto trato que se encontraba recibiendo como miembro de la denominada comunidad LGBTTQIA, no contenida en la *Solicitud de Remedio Administrativo* con la que se inició el proceso.[1]

---

[1] En específico, aunque en la *Solicitud de Remedio Administrativo* la parte recurrente afirmó, sin ambages, sentirse segura en el lugar donde había sido ubicado, en la *Solicitud de Reconsideración* adujo confrontar problemas de seguridad por ser *trans.*

Entonces, examinada la *Solicitud de Reconsideración*, el 12 de julio de 2023, la DRA emitió *Respuesta de reconsideración al miembro de la población correccional*, denegando la solicitud de *Reconsideración*. Al así decidir, el DRA llevó a la atención de la parte recurrente el hecho de que se encontraba en custodia máxima, en la Sección 2G, por ser dicho edificio el designado para albergar a los confinados en custodias máximas, según correspondía a esta. Añadió que, a tenor, se le estaban brindando servicios como a todos los miembros de la población correccional, siendo los parámetros de seguridad en dicho espacio muy rigurosos. Se aludió, además, al hecho de que la parte recurrente transita libre y voluntariamente a la capellanía.

Inconforme, el 16 de agosto de 2023, la parte recurrente acudió ante nosotros, mediante *Recurso de Revisión Judicial,* en el que hizo los siguientes señalamientos de error:

> **PRIMER ERROR:** ERRÓ EL SUPERINTENDENTE EN SU ANÁLISIS DEL REMEDIO #B-701-23; MINTIÓ AL INSINUAR QUE YO SOLICITÉ ESTAR EN EL 2G.
>
> **SEGUNDO ERROR:** ME PREJUICIARON AL DENEGAR LA RECONSIDERACIÓN.
>
> **TERCER ERROR:** FUI DISCRIMINADA AL SER UBICADA EN LA UNIDAD 2G.
>
> **CUARTO ERROR:** NO RESPETAN MI IDENTIDAD DE GÉNERO [,] IGNORARON SUS PROPIOS REGLAMENTOS.
>
> **QUINTO ERROR:** EL PROCURADOR EXPRESA CONFUSIÓN EN SU SOLICITUD DE DESESTIMACIÓN.

En respuesta al recurso de revisión judicial, el DCR compareció ante nosotros, a través de la Oficina del Procurador General (el Procurador). En su escrito, el Procurador llama nuestra atención al hecho de que, a pesar la parte recurrente haber solicitado como remedio la provisión de servicios relativos a empleo y estudios, el DCR no respondió a ese reclamo específico, que constituía la médula del remedio contenido en la *Solicitud de Remedio Administrativo*. En consonancia, nos solicitó que ordenáramos como remedio la devolución del asunto al DCR, con el fin de que la agencia administrativa ofrezca una verdadera respuesta a tal solicitud de trabajo y empleo.

Coincidimos con la apreciación del Procurador.

## II. Exposición de Derecho

### A. Revisión Judicial

La Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), Ley Núm. 38-2017, según enmendada, 3 LPRA sec. 9601 *et seq.*, dispone sobre el alcance de la revisión judicial de las determinaciones de las agencias. Tanto la referida ley, como la jurisprudencia aplicable, establecen que la función revisora de las decisiones administrativas concedida a los tribunales apelativos consiste esencialmente en determinar si la actuación de la agencia fue dictada dentro de las facultades que le fueron conferidas por ley y si la misma es legal y razonable. *T–JAC, Inc. v. Caguas Centrum Limited*, 148 DPR 70, 80 (1999). Al respecto, es norma de derecho claramente establecida que los tribunales apelativos han de conceder gran deferencia y consideraciones a las decisiones de los organismos administrativos en vista de la vasta experiencia y conocimiento especializado. *Graciani Rodríguez v. Garage Isla Verde, LLC,* 202 DPR 117, 126 (2019); *Mun. de San Juan v. Plaza Las Américas*, 169 DPR 310, 323 (2006); *Hernández Álvarez v. Centro Unido,* 168 DPR 592, 615–616 (2006). Por lo tanto, los tribunales deben ser cautelosos al intervenir con las decisiones administrativas. *Metropolitana, S.E. v. A.R.P.E.,* 138 DPR 200, 213 (1995); *Viajes Gallardo v. Clavell*, 131 DPR 275, 289–290 (1992).

Es por las razones expuestas que las decisiones de los foros administrativos están investidas de una presunción de regularidad y corrección. *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 892 (2008); *Vélez v. A.R.P.E.*, 167 DPR 684, 693 (2006); *Rivera Concepción v. A.R.P.E.*, 152 DPR 116, 123 (2000). La presunción de corrección que acarrea una decisión administrativa deberá sostenerse por los tribunales, a menos que la misma logre ser derrotada mediante la identificación de evidencia en contrario que obre en el expediente administrativo. *Misión Ind. P.R. v. J.P.*, 146 DPR 64, 130 (1998); *A.R.P.E. v. J.A.C.L.*, 124 DPR 858, 864 (1989).

Al momento de revisar una decisión administrativa el criterio rector para los tribunales será la razonabilidad en la actuación de la agencia. *Rebollo*

*v. Yiyi Motors, Motors,* 161 DPR 69, 76 (2004). Conforme a lo cual, habrá que determinar si la actuación de la agencia fue arbitraria, ilegal, caprichosa o tan irrazonable que constituyó un abuso de discreción. *Mun. De San Juan v. CRIM,* 178 DPR 164, 175 (2010). Por tanto, la revisión judicial de una determinación administrativa se circunscribe a determinar si: (1) el remedio concedido por la agencia fue apropiado; (2) las determinaciones de hechos realizadas por la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo, y (3) las conclusiones de derecho fueron correctas. Sec. 4.5 de la Ley Núm. 38-2017, conocida como la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, 3 LPRA sec. 9675; *Torres Rivera v. Policía de PR*, 196 DPR 606, 626-627 (2016).

Por otra parte, nuestro Tribunal Supremo ha identificado circunstancias en que corresponde no observar tal deferencia. En específico, dicho alto foro ha reconocido que la referida deferencia a las determinaciones administrativas cederá cuando: (1) la decisión no está basada en evidencia sustancial; (2) el organismo administrativo ha errado en la aplicación de la ley, y (3) ha mediado una actuación irrazonable o ilegal. *Acarón, et al v. D.R.N.A.,* 186 DPR 564, 584 (2012)*; Marina Costa Azul v. Comisión,* 170 DPR 847, 852 (2007).

**B. Reglamento para Atender las Solicitudes de Remedios Administrativos Radicados por los Miembros de la Población Correccional, Reglamento Núm. 8538.**

En virtud de la facultad que dimana del Plan de Reorganización Núm. 2-2011, se le confiere al Secretario del Departamento de Corrección y Rehabilitación la facultad de adoptar Reglamentos, y, en efecto este adoptó, *el Reglamento para Atender las Solicitudes de Remedios Administrativos Radicadas por los Miembros de la Población Correccional,* Reglamento Núm. 8583 de 5 de mayo de 2015, (Reglamento Núm. 8583). Véase Reglamento Núm. 8583, Regla II. Mediante éste se creó la División de Remedios Administrativos como un organismo administrativo con la facultad de atender cualquier queja o agravio que pudieran tener los confinados en contra del Departamento o sus funcionarios sobre cualquier asunto, incluyendo los

servicios médicos. Véase Reglamento Núm. 8583, *Introducción.* A través de dicha División los confinados pueden presentar una solicitud de remedio, referente, en lo pertinente, a *actos e incidentes que afecten personalmente al confinado en su **bienestar físico**, mental, seguridad personal o en su plan institucional.* Reglamento Núm. 8583, Regla VI (1)(a). (Énfasis provisto).

De igual forma, el Reglamento Núm. 8583 dispone que el evaluador utilizará todos los procedimientos que estime necesarios para la obtención de la información requerida para brindar una **respuesta adecuada** al miembro de la población correccional. Reglamento Núm. 8583, Regla XIII (1). (Énfasis provisto).

## III. Aplicación del Derecho a los hechos

Iniciamos por recalcar que, en el recurso de revisión judicial instado por la parte recurrente se hicieron varios señalamientos de error referentes a asuntos que no estuvieron ante la consideración de la agencia recurrida al momento de ser presentada la *Solicitud de Remedio Administrativo.* Por lo cual, en nuestra función de revisión nos limitaremos a dilucidar el asunto que sí estuvo contenido en la *Solicitud de Remedio Administrativo,* referente a la presunta carencia de los servicios de empleo y estudio en el lugar donde se encuentra ubicada la parte recurrente, reclamo medular que inició el proceso administrativo.

Sobre ello, la parte recurrente aduce en su recurso de revisión judicial, que incidió el DCR al no emitir *Respuesta* a su solicitud de que le proveyeran *trabajo, estudios y servicios.*

Como adelantamos en el tracto procesal, en su *Escrito en cumplimiento de resolución* el Procurador aseveró ante nosotros que, en efecto, en la *Respuesta* recurrida **no** se había atendido de manera específica el reclamo de la parte recurrente, en cuanto a los servicios de estudio y trabajo solicitados. Abundó el Procurador que el DCR no había dado respuesta precisa a la parte recurrente, a pesar de que el DCR le informó que esta: (1) se encuentra en una lista de espera para estudios de barbería y estilismo o sistemas de oficina, pues al momento no hay cupos en dichos cursos y; (2) no se encuentra

trabajando pues actualmente las plazas disponibles están siendo ocupadas por otros confinados. De conformidad, añadió que, aunque la DRA no era el organismo con la autoridad de conceder trabajos y estudios a un confinado, por ser esto función del Comité de Clasificación y Tratamiento, **el caso debía ser devuelto a la agencia recurrida para que emita una determinación que sea responsiva a la solicitud de la parte recurrente aludida**. Coincidimos.

Según adelantamos, el Reglamento Núm. 8583 creó la División de Remedios Administrativos para que este fuese un organismo administrativo con la facultad de atender cualquier queja o agravio que tuviesen los confinados. De ahí que estos últimos pueden presentar solicitud de remedios, referentes a actos que les afecten personalmente en su bienestar físico, mental, seguridad personal o plan institucional. De igual forma, dispone el citado Reglamento, que el evaluador brindará una **respuesta adecuada** a la solicitud del miembro de la población correccional. De tal nomenclatura, *respuesta adecuada,* nos queda claro que el cumplimiento con el Reglamento comporta necesariamente una contestación que atienda con precisión el asunto que se plantea. Es decir, la *respuesta adecuada* a la que alude la reglamentación no supone, en modo alguno, que necesariamente se conceda el remedio solicitado por el confinado, pero sí que se dé contestación a la solicitud precisada.

En el tracto procesal dejamos plasmado que, en su *Solicitud de Remedio Administrativo,* la parte recurrente solicitó **poder continuar con su plan institucional, trabajar y estudiar en el lugar donde fue ubicada**. Reiteramos que este constituyó el reclamo esencial y preciso que hizo la parte recurrente en su *Solicitud de Remedio Administrativo.* No obstante, y tal cual certeramente lo señalara el Procurador ante nosotros, en la *Respuesta a Reconsideración* el DRA no se expresó sobre qué servicios de trabajo y estudio podría tener la parte recurrente en el lugar donde actualmente se encuentra confinada. Aunque el DCR aludió en su *Respuesta a Reconsideración* a asuntos pertinentes a la petición de la parte recurrente, como los relativos a

la calificación de custodia máxima que ostenta, por tanto, sujeto a parámetros de seguridad sumamente rigurosos, hizo una mención genérica sobre los servicios que recibe, los de *todos los miembros de la población correccional,* sin precisar sobre los servicios de estudio o trabajo, según correspondan a su calificación.

En definitiva, concluimos que el DCR no emitió una *respuesta adecuada* al petitorio de la parte recurrente contenido en la *Solicitud de Remedio Administrativo,* contrario al requerimiento que a esos efectos dimana del Reglamento Núm. 8583. Por tanto, no habiendo sido responsiva la agencia administrativa recurrida, procede que ordenemos devolver el caso para que atienda específicamente el asunto indicado.

## IV.  Parte dispositiva

Por los fundamentos expuestos, revocamos la determinación recurrida y devolvemos el caso al DCR, para que ofrezca una respuesta adecuada, que se ajuste a lo aquí discutido.

Lo pronunció y manda el Tribunal y lo certifica su Secretaria.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones